UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VIVIAN LAWSON,

                    Plaintiff,                      Case No. 20-cv-10460

v.                                                  Paul D. Borman
                                                    United States District Judge

MICHIGAN FIRST CREDIT UNION
and EQUIFAX INFORMATION
SERVICES, LLC,

                    Defendants.
_____/

## OPINION AND ORDER DENYING DEFENDANT MICHIGAN FIRST CREDIT UNION'S MOTION TO DISMISS (ECF NO. 5)

In this action, Plaintiff Vivian Lawson asserts claims against Defendants Michigan First Credit Union and Equifax Information Services, LLC for alleged negligent and willful violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.* Now before the Court is Defendant Michigan First Credit Union's motion to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 5.) The motion is fully briefed and ready for resolution by the Court. The Court finds that the briefing adequately addresses the issues in contention and dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2). For the reasons that follow, the Court DENIES the motion to dismiss.

# I.  FACTUAL AND PROCEDURAL BACKGROUND

## A.  Plaintiff's Complaint

On or about January 15, 2020, Plaintiff filed this action against Defendants Michigan First Credit Union ("Michigan First") and Equifax Information Services, LLC ("Equifax") in state court.  (ECF No. 1-1, Compl.)  Defendant Michigan First was served with the Complaint on or about February 7, 2020, and timely removed this action to this Court on February 21, 2020.  (ECF No. 1.)  Defendant Equifax has not been served with the Complaint to date.  Because this is a motion to dismiss, the facts recited below are stated as they are alleged in Plaintiff's Complaint.

Plaintiff is a resident of Oakland County, Michigan.  (Compl. ¶ 4, PgID 9.) She alleges that Defendant Michigan First inaccurately reported three tradelines ("Errant Tradelines") on her Equifax credit disclosures, with inaccurate monthly payment amounts.  (*Id*. ¶ 6, PgID 9-10.)  Specifically, (1) Errant Tradeline 1, opened in January 2014, showed "an erroneous monthly payment of $379.00;" (2) Errant Tradeline 2, opened in August 2015, showed "an erroneous monthly payment of $328.00;" and (3) Errant Tradeline 3, opened in June 2014, showed "an erroneous monthly payment of $151.00."  (*Id.*)

Plaintiff alleges that Michigan First closed Errant Tradeline 1 and accelerated the balance due, with no payment plan in place, and thus Plaintiff no longer has an

obligation to make monthly payments to Michigan First.  (*Id.* ¶ 7, PgID 10.)  Plaintiff claims that Errant Tradelines 2 and 3 were paid and closed and thus she no longer has an obligation to make monthly payment to Michigan First for those tradelines. (*Id.* ¶ 8.)  Plaintiff alleges that the credit reporting industry standards and the Credit Reporting Resource Guide ("CRRG") required Defendant to report the Errant Tradelines with a monthly payment of $0.00.  (*Id.* ¶ 9.)

Plaintiff states that she obtained her Equifax credit disclosure on May 18, 2019, and noticed the Errant Tradelines inaccurately reporting erroneous monthly payment amounts.  (*Id.* ¶ 10.)  On or about June 27, 2019, Plaintiff submitted a letter to Equifax, disputing the Errant Tradelines, and explaining that the accounts reflected by the Errant Tradelines were charged off or paid and closed by Michigan First, and thus she no longer has an obligation to make monthly payments to Michigan First.  (*Id.* ¶¶ 11-12.)  She asked Equifax to report the Errant Tradelines with a monthly payment of $0.00, and Equifax forwarded her consumer dispute to Michigan First.  (*Id.* ¶¶ 12-13.)

Michigan First received Plaintiff's consumer dispute from Equifax and, in response, Michigan First verified to Equifax that its reporting of its Errant Tradelines was accurate.  (*Id.* ¶¶ 14-16, PgID 10-11.)

Plaintiff did not receive Equifax's investigation results, and thus, on September 16, 2019, she again obtained her Equifax credit disclosure, which showed that Equifax and Michigan First failed or refused to correctly report the Errant Tradelines with a monthly payment amount of $0.00. (*Id.* ¶ 17, PgID 11.)  Plaintiff alleges that Michigan First failed to conduct a proper investigation of her dispute, did not consult the CCRG as part of its investigation of Plaintiff's dispute, and failed to review all relevant information available to it and provided by Equifax. (*Id.* ¶¶ 15, 20-21, 27-28.)[1]

Plaintiff then filed her lawsuit in state court, pleading negligent and willful violations of the FCRA, 15 U.S.C. § 1681 *et seq.*, by Defendants. (Compl.)

---

[1] Plaintiff attached a copy of the CCRG as Exhibit 2 to her response to Defendant's Motion to Dismiss. (ECF No. 8-2, 2017 Credit Reporting Resource Guide.) However, that Report was not attached to Plaintiff's Complaint and will not be considered here on Defendant's Motion to Dismiss. *See Thomas v. Noder-Love*, 621 F. App'x 825, 829 (6th Cir. 2015) ("Documents outside of the pleadings that may typically be incorporated without converting the motion to dismiss into a motion for summary judgment are public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies.") (internal quotation marks and citations omitted). In addition, other courts in this Circuit that have addressed this Report on a motion for summary judgment have refused to consider it, finding it to be inadmissible hearsay. *See Euring v. Equifax Info. Servs.,* LLC, No. 19-CV-11675, 2020 WL 1508344, at *7 (E.D. Mich. Mar. 30, 2020) ("The cited guidelines of the CRRG are out-of-court statements by an industry group. These are industry guidelines, not legal authority like regulations, laws or cases" and thus "the Court will not consider the CRRG in evaluating UCFSC's motion for summary judgment."); *see also Cowley v. Equifax Info. Servs., LLC*, No. 2:18-cv-02846-TLP-cgc, 2019 WL 5847851, at *2 (W.D. Tenn. Nov. 7, 2019) (same).

Specifically, with regard to Defendant Michigan First, Plaintiff brings claims pursuant to 15 U.S.C. § 1681s-2(b) due to Michigan First's alleged failure to properly investigate the dispute and correct reporting of the Errant Tradelines.  (*Id.* ¶¶ 19-30, PgID 11-13.)  She alleges that the Errant Tradelines create a misleading impression on her consumer credit file with Equifax and, as a result of Defendant Michigan First's negligent and/or willful failure to comply with the provisions of the FCRA, she has suffered credit and emotional damages and experienced undue stress and anxiety due to Defendants' failure to correct the errors or improve her financial situation by obtaining new or more favorable credit terms.  (*Id.* ¶¶ 18, 22-23, 29-30.)

### B.     Defendant Michigan First's Motion to Dismiss

On February 28, 2020, Defendant Michigan First filed its Motion to Dismiss Plaintiff's Complaint.  (ECF No. 5, Def.'s Mot.)  Defendant argues that Plaintiff: (1) did not and cannot plead that the tradelines at issue are inaccurate because listing the historical monthly payment on an account is not inaccurate and misleading and Plaintiff has not identified any creditor or third party who was misled by the tradelines; (2) did not and cannot plead that Michigan First failed to conduct a reasonable investigation, beyond her conclusory allegations; and (3) did not and cannot plead any specific facts to support the vague allegations that she has suffered damages.  (*Id.*)

Plaintiff filed a response in opposition to Defendant's motion on March 20, 2020.  (ECF No. 8, Pl.'s Resp.)  Plaintiff argues that: (1) Michigan First's continued reporting of more than $800 in scheduled monthly payments on three closed accounts is "patently inaccurate" and misleading; (2) she does not need to plead the specific facts of Michigan First's investigation, or lack thereof, as she cannot know these facts before engaging in discovery; and (3) she has sufficiently pleaded her damages, alleging that she suffered credit and emotional damages, undue stress, anxiety, mental anguish, suffering, humiliation and embarrassment.  (*Id.*)

Defendant filed a reply brief on March 31, 2020, reasserting the arguments it made in its motion.  (ECF No. 9, Def.'s Reply.)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012).  To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he complaint 'does not need detailed factual

allegations' but should identify 'more than labels and conclusions.'" *Casias v. Wal–Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Handy-Clay*, 695 F.3d at 539 (internal citations and quotation marks omitted). In other words, a plaintiff must provide more than a "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The Sixth Circuit has explained that "[t]o survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents that are referenced in the plaintiff's complaint and that are central to plaintiff's claims, (2) matters of which a court may take judicial notice, (3) documents that are a matter of public record, and (4) letters that constitute decisions of a governmental agency. *Thomas v. Noder-Love*, 621 F. App'x 825, 829 (6th Cir. 2015) ("Documents outside of the pleadings that may typically be incorporated

without converting the motion to dismiss into a motion for summary judgment are public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies.") (internal quotation marks and citations omitted); *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) ("We have taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6). If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings. . . . [C]ourts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies."); *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (finding that documents attached to a motion to dismiss that are referred to in the complaint and central to the claim are deemed to form a part of the pleadings). Where the claims rely on the existence of a written agreement, and plaintiff fails to attach the written instrument, "the defendant may introduce the pertinent exhibit," which is then considered part of the pleadings. *QQC, Inc. v. Hewlett-Packard Co*., 258 F.Supp.2d 718, 721 (E.D. Mich. 2003). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document." *Weiner v. Klais and Co., Inc*., 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002).

## III.   ANALYSIS

### A.   FCRA Claims

"Congress enacted [the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.*,] in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 628 (6th Cir. 2018).  The statute imposes different obligations on three types of entities: (1) consumer reporting agencies, such as Equifax Information Services, LLC; (2) users of consumer reports; and (3) furnishers of information to consumer reporting agencies, such as Defendant Michigan First.  *See Nelski v. Trans Union LLC*, 86 F. App'x 840, 844 (6th Cir. 2004).

The FCRA "requires consumer credit reporting agencies to 'follow reasonable procedures to assure maximum possible accuracy of' consumer credit reports." *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 862 (6th Cir. 2020) (quoting 15 U.S.C. § 1681e(b)).  "The statute provides consumers with a cause of action if a consumer reporting agency violates their statutorily created procedural rights." *Id.*

"Under the FCRA, those who furnish information to consumer reporting agencies have two obligations: (1) to provide accurate information; and (2) to undertake an investigation upon receipt of a notice of dispute regarding credit information that is furnished." *Scott v. First Southern Nat'l Bank*, 936 F.3d 509, 517

9

(6th Cir. 2019) (quotations omitted); *see* 15 U.S.C. § 1681s-2.  "The FCRA creates a private right of action for consumers to enforce the requirement under § 1681s-2(b) that furnishers of information investigate upon receiving notice of a dispute, but not the requirement under § 1681s-2(a) that furnishers of information initially provide accurate information to consumer reporting agencies." *Id.* Thus, "consumers must file a dispute with a consumer reporting agency to trigger the furnisher's duty to investigate under § 1681s-2(b)." *Id.*

"After receiving notice of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency," the reporting entity must:

> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
> (C) report the results of the investigation to the consumer reporting agency;
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly —

(i) modify that item of information;

(ii) delete that item of information; or

(iii) permanently block the reporting of that item of information.

*Pittman*, 901 F.3d at 628 (quoting 15 U.S.C. § 1681s-2(b)(1)).  The Sixth Circuit has held that the investigation an information furnisher must undertake pursuant to this section is a "reasonable one" and that "the term 'investigation' … denotes a 'fairly searching inquiry,' or at least something more than a merely cursory review." *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 616 (6th Cir. 2012) (citations omitted).

The "FCRA expressly creates a private right of action against a furnisher who fails to satisfy one of five duties identified in § 1681s-2(b)."  *Pittman*, 901 F.3d at 628.  A "consumer is permitted to demonstrate that a furnisher negligently breached one of these duties, under § 1681o, or willfully breached one of them, under § 1681n."  *Id.*  Regardless of the particular breach alleged, "a threshold showing of inaccuracy or incompleteness is necessary in order to succeed on a claim under § 1681s-2(b)."  *Id.* at 629.

Thus, the required elements of a viable claim of inaccurate reporting against a furnisher are: "(1) the defendant reported inaccurate information about the plaintiff; (2) the defendant either negligently or willfully failed to follow reasonable

11

procedures to assure maximum possible accuracy of the information about the plaintiff; (3) the plaintiff was injured; and (4) the defendant's conduct was the proximate cause of the plaintiff's injury." *Nelski*, 86 F. App'x at 844.

### B.   Plaintiff Has Sufficiently Alleged Inaccurate or Misleading Reporting

Defendant argues that Plaintiff has failed to properly plead that the Errant Tradelines identified in Plaintiff's Complaint are inaccurate.  (Def.'s Mot. at pp. 2-10, PgID 34-42.)  According to Defendant, simply listing the historical monthly payment of an account that has been closed or charged-off does not by itself make the reporting inaccurate.  (*Id.* at pp. 4, 7, PgID 36, 39.)  It argues that Plaintiff "has not alleged that the monthly payment notations were not the correct monthly payment on the accounts" and "has not identified any creditor or third party that was misled by the tradelines."  (*Id.* at pp. 6, 8, PgID 38, 40.)  Defendant contends that "the 'Sixth Circuit has held that reporting is accurate for purposes of the FCRA as long as it is technically accurate, or accurate on its face' and that "'[a] consumer's conclusory allegation that a report is misleading is insufficient to meet this standard delineated by the Sixth Circuit.'"  (*Id.* at p. 3, PgID 35 (quoting *Shaw v. Equifax Info. Sols., Inc.*, 204 F. Supp. 3d 956, 960 (E.D. Mich. 2016).)

Plaintiff argues in response that she has adequately pleaded that Defendant's reporting of the scheduled monthly payment amounts was inaccurate and

misleading.  (Pl.'s Resp. at pp. 9-16, PgID 166-173.)  She contends that she alleged that the scheduled monthly payments were not correct, and in fact "patently inaccurate," at the time of her dispute as she no longer had an obligation to make those monthly payments.  (*Id.* at pp. 9-11, PgID 166-68.)  She further argues that liability under the FCRA is not predicated on the occurrence of an adverse event, such as the denial of credit or transmission of the report to third parties, and thus she is not required "to allege (or prove) that a creditor or third party was misled by the [Errant Tradelines] or that she was denied credit to sustain her claims against [Defendant]."  (*Id.* at pp. 10-11, PgID 167-68.)  Plaintiff contends that she "needs to allege that [Defendant's] reporting is either false **or** creates a materially misleading impression," not both, and that she has "clearly alleged that [Defendant's] continued reporting of the scheduled monthly payment amounts in response to Plaintiff's dispute is false."  (*Id.* at p. 11, PgID 168 (emphasis in original).)  Finally, she discusses "several courts within the past year [that] have considered motions to dismiss similar to that filed by [Defendant] and have denied those motions."  (*Id.* at pp. 12-17, PgID 169-74.)[2]

---

[2] Every one of those cases cited by Plaintiff were out-of-circuit decisions, primarily from district courts in Arizona and Georgia.  (*See id.*)

After the briefing closed in this case, in a decision dated April 2, 2020, the Sixth Circuit clarified the definition of "inaccuracy" under the FCRA and expressly rejected the "technically accurate" standard espoused by Defendant here.  *See Twumasi-Ankrah v. Checkr, Inc.*, 954 F.3d 938, 942 (6th Cir. 2020).[3]  The Sixth Circuit held that "to state the first element of a claim under § 1681e(b), a plaintiff may allege that a CRA reported either 'patently incorrect' information about them *or* information that was 'misleading in such a way and to such an extent that it [could have been] expected to have an adverse effect [on the consumer].'"  *Id.* (emphasis in original) (quoting *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001)).  The Sixth Circuit explained that "[t]his conclusion accords with the text of the statute, our case law governing adjacent sections of the statute [namely, § 1681s-2(b)], and the views of virtually every other circuit court to have considered this issue" and "[t]o the extent our prior decisions implied otherwise, that was error."  *Id.*; *see also id.* at 942-43 (analyzing and discussing the text of § 1681e(b), case law addressing § 1681s-2(b), and case law from other circuits, noting that "every circuit to have considered whether to apply a technical-accuracy standard

---

[3] Although the Court in *Twumasi-Ankrah* addressed a different provision of the FCRA – 15 U.S.C. § 1681e(b) – there is no reason to believe that the "accuracy" definition is any different under 15 U.S.C. § 1681s-2(b).  Indeed, the *Twumasi-Ankrah* court stated that "[o]ur published case law concerning § 1681-2(b) … confirms the logic of this result."  *Twumasi-Ankrah*, 954 F.3d at 942-43.

14

under § 1681e(b) has declined to do so and has instead adopted an 'inaccurate or misleading' standard").

Accordingly, under this controlling standard, "to state the first element of a claim under [§ 1681s-2(b)], a plaintiff may allege that a [furnisher] reported either 'patently incorrect' information about them *or* information that was 'misleading in such a way and to such an extent that it [could have been] expected to have an adverse effect [on the consumer].'" *Id.* at 942 (emphasis in original); *see also Pittman*, 901 F.3d 630 ("To meet this threshold showing [of inaccuracy], a plaintiff can show that the information is false or that it contains a material omission or creates a materially misleading impression.").

Applying this standard, it is plain that Plaintiff's Complaint pleads sufficient facts to establish the threshold allegation that the Errant Tradelines were inaccurate or misleading. Plaintiff alleges that the three Errant Tradelines inaccurately reported monthly payment obligations, even though Errant Tradeline 1 was charged off and closed, and Errant Tradelines 2 and 3 were paid and closed. (Compl. ¶¶ 6-8, PgID 9-10.) Plaintiff complains that these Errant Tradelines "should be reported by Michigan First with a monthly payment of $0.00." (*Id.* ¶ 9, PgID 10.)

A court in this District recently found, in a case involving the same parties and the same counsel as in this case, that a complaint with very similar allegations

pleaded sufficient facts to survive a motion to dismiss.  *See Tillman v. Equifax Info. Servs., LLC*, No. 19-12860, 2020 WL 249004, at \*2-3 (E.D. Mich. Jan. 16, 2020) (Lawson, J.).  That court noted that "the plaintiff plainly alleged that the defendant reported an account that was 'closed' and 'charged off' as having a 'monthly payment amount of $442'" and found that "[f]ederal courts readily have concluded that such reporting is inaccurate and misleading because it creates the implication that the consumer has an obligation to make payments on an account that in fact has no balance outstanding and no payments due."  *Id.* ("Allegations of inaccuracy are sufficient where the reported data allegedly 'listed a balance owed even though the account was closed or charged off,' and 'failed to report that the account had been discharged or closed.'") (citation omitted).

Like the defendant did in *Tillman*, Defendant here relies on other cases that contain allegations of a report of an "historical" monthly payment amount listed for a tradeline *along with* information stating that *the account has been charged off and closed with a zero balance*, in which the court found that reporting not to be inaccurate or misleading.  (See Def.'s Mot. at pp. 4-10, PgID 36-42); *see Tillman*, 2020 WL 249004, at \*3-4 (distinguishing cases in which "the pleadings incorporated credit disclosure reports which plainly indicated the status of the disputed account as 'discharged,' 'included in bankruptcy,' and with a zero balance") (discussing,

16

*e.g.*, *Hamilton v. Equifax Info. Servs., LLC*, No. 18-13458, 2019 WL 3864742, at *5 (E.D. Mich. Aug. 16 2019); *Franklin v. Trans Union, LLC*, No. 19-0888, 2019 WL 6871254, at *3 (C.D. Cal. Oct. 8, 2019); *Seay v. Trans Union, LLC*, No. 18-204, 2019 WL 4773827, at *5 (M.D. Ga. Sept. 30, 2019); and *Her v. Equifax Info. Servs., LLC*, No. 18-5182, 2019 WL 4295279, at *2 (N.D. Ga. Aug. 19, 2019)).

However, those decisions Defendant relies on in this case, many of which were either deciding a motion for summary judgment instead of a motion to dismiss or were out-of-circuit cases, are readily distinguishable because those cases also included either the credit report as an exhibit or at least incorporated excerpts of the credit report in the complaint showing exactly what the report contained and plainly indicating the status of the disputed account as "closed" or "discharged" *and* with a zero balance.  *See, e.g., Cowley v. Equifax Info. Servs., LLC*, No. 2:18-cv-02846-TLP-cgc, 2019 WL 4936036, at *3 (W.D. Tenn. Aug. 12, 2019) (examining credit report on motion for summary judgment and noting that "the report was accurate because the $32.00 was the correct monthly payment amount while the account was active"), and noting on reconsideration that the report "showed that Plaintiff paid the balance in full with a current balance of $0, an amount past due of $0, and an amount charged off of $0," *Cowley*, 2019 WL 5310205, at *2 (W.D. Tenn. Oct. 21, 2019); *Rodriguez v. Trans Union LLC*, No. 1:19-CV-379-LY, 2019 WL 5565956, at *3

17

(W.D. Tex. Oct. 28, 2019) ("The Court finds that Trans Union's credit report is unequivocally clear that the Santander Account is closed and Plaintiff no longer owes any money on it[.]"); *Gibson v. Equifax Info. Servs., LLC*, No. 5:18-CV-00465-TES, 2019 WL 4731957, at *4 (M.D. Ga. July 2, 2019) ("While Defendant's reporting of Plaintiff's trade line does have a positive scheduled monthly payment, it also clearly shows the accounts are closed and the balances are all $0."); *Seay*, 2019 WL 4773827, at *5 (deciding on summary judgment that "Plaintiff's Trans Union credit report very plainly shows that the Shamrock account is closed with a $0.00 [balance] and that there is no future obligation to make any payment."); *Thompson v. Equifax Info. Servs., LLC*, No. 2:18-CV-12495-TGB, 2020 WL 806032, at *10 (E.D. Mich. Feb. 18, 2020) (finding, on summary judgment, that "[i]t is clear from reading the trade line as a whole that the 'monthly payment' field is historical rather than current because other fields in the tradeline state that the balance is '$10,800,' that the 'payment status' is 'collection/charge-off,' that the 'amount past due' is '$10,800,' that the account's 'closed date' is 'Jan 1, 2017,' and that the 'account status' is 'closed-derogatory.'").[4]

---

[4] Both Defendant and Plaintiff largely rely on cases outside the Sixth Circuit. (See Def.'s Mot. at pp. 4-10, PgID 36-42; Pl.'s Resp. at 12-17, PgID 169-74.)

But that is not what Plaintiff alleges in this case.  She pleads no facts to suggest that the reporting noted that the account was charged off, closed and had a zero balance.  (*See* Compl. ¶ 6,  PgID 9-10 (alleging "Michigan First is inaccurately reporting the following three tradelines … on Plaintiff's Equifax credit disclosure with erroneous monthly payment amounts[.]").)  Plaintiff did not attach a copy of the credit report to the pleadings.  As the *Tillman* court explained, "[t]he Court must consider the facts alleged in the complaint without resort to matters outside the pleadings, and, so far as they go, nothing in the pleadings suggests that the reporting completely reflected the status of the plaintiff's account with the defendant." *Tillman*, 2020 WL 249004, at * 3.

Here, like in *Tillman*, the Complaint sufficiently alleges that the Errant Tradelines are inaccurate or misleading, and "there is no requirement that the plaintiff identify an actual creditor that was misled by the reported information." *Tillman*, 2020 WL 249004, at *4; *see also Lovelace v. Equifax Info. Servs., LLC*, No. 18-cv-04080-DWL, 2019 WL 241080, at *4 (D. Ariz. June 7, 2019) (holding that "a credit report showing a 'scheduled monthly payment' of more than $0 for an account that is closed is inaccurate on its face").  Thus, construing the Complaint in the light most favorable to Plaintiff, accepting her allegations as true, and drawing all reasonable inferences in favor of Plaintiff, the Court finds that Plaintiff has

19

sufficiently pleaded that the Errant Tradelines are inaccurate or misleading. *See Handy-Clay*, 695 F.3d at 538.

### C.    Plaintiff Has Sufficiently Alleged An Inadequate Investigation

Defendant next argues that Plaintiff has not sufficiently pleaded that Michigan First failed to conduct a reasonable investigation of Plaintiff's dispute, beyond her conclusory allegations that Defendant violated 15 U.S.C. § 1681s-2(b).  (Def.'s Mot. at pp. 10-13, PgID 42-45.) Defendant contends that Plaintiff's allegations "constitute legal conclusions" that "are not afforded an assumption of truth," and that the only factual allegation Plaintiff makes is that Defendant did not review the Credit Reporting Resource Guide ("CRRG") during its investigation.  (*Id.* (citing Compl. ¶ 15).)  Defendant argues that it is not required to review the CRRG or any industry standards.  (*Id.*)

Plaintiff responds that she is not required by *Twombly*, *Iqbal* and their progeny to plead facts with particularity because she "does not allege fraud, mistake, special damages, or any other matter that requires pleading facts with particularity."  (Pl.'s Resp. at p. 17, PgID 174.)  Rather, she is merely required to plead sufficient facts to state a plausible claim for relief, which she did.  (*Id.*)  She argues that she cannot know the communications between Defendant and Equifax, and the details of the investigation, until she engages in discovery.  (*Id.* at p. 18, PgID 175.)  And, she

contends, she does not cite the CRRG to show that Defendant's reporting is inaccurate, but rather as the "industry standard for credit reporting, to support [her] claims that [Defendant's] violation of the FCRA rose to the level of negligence (by failing to meet the industry standard)." (*Id.* at pp. 18-19, PgID 175-76.)

The court in *Tillman* examined these same arguments based on very similar allegations in the complaint and concluded that it "fairly may infer from the pleaded facts that the Credit Union knew that the plaintiff's account was closed and charged off, with a zero balance, and it was informed that the trade line was reported with a monthly payment obligation, but the Credit Union nevertheless failed to correct the inaccurate reporting." *Tillman*, 2020 WL 249004, at *4. The court noted that the defendant did not dispute that the account was closed and that a monthly obligation was indicated on the credit report. *Id.* The court explained that "the plaintiff is not required at the pleading stage to recite an exhaustive inventory of information overlooked or a litany of steps not taken by the defendant during its investigation" because "[s]uch a requirement would hold plaintiffs to an impossible standard of pleading, since information about the conduct of the investigation is at this stage of the case exclusively within the knowledge of the defendant." *Id.* Rather, "[t]he question whether the investigation was reasonably thorough is an issue of fact for the jury, taking into account all of the circumstances that may be uncovered by

discovery." *Id.* (citing *Pittman*, 901 F.3d at 639); *see also Begres v. Experian Info. Sols., Inc.*, No. 19-11649, 2020 WL 532173, at *3 (E.D. Mich. Feb. 3, 2020) ("The[] allegations establish that Plaintiff disputed American Honda's credit information to two CRAs, the credit information was false, the CRAs provided notice of the dispute to American Honda, and American Honda failed to fulfill one or more of its responsibilities under § 1681s-2(b) after receiving notice of the dispute. To satisfy Rule 8's pleading requirements, the Court does not believe that Plaintiff needs to plead specific facts to show how American Honda failed to conduct a reasonable investigation."); *Edgerton v. Nationstar Mortg., LLC*, No. 18-12020, 2018 WL 7680610, at *6 (E.D. Mich. Dec. 31, 2018) (finding that plaintiff sufficiently stated a claim for violation of § 1681s-2(b), even though she "does not directly discuss what, if any investigation occurred" because "[a] fair reading of plaintiff's allegations is that in lieu of or instead of conducting an investigation into the accuracy of information provided, Nationstar provided a nominal update that basically consisted of piling on more inaccurate information"), *report and recommendation adopted by* 2019 WL 1011108 (E.D. Mich. Mar. 4, 2019); *Moore v. Capital One Serv., LLC*, No. 1:13-cv-128, 2013 WL 1136725, at *3 (W.D. Mich. Feb. 26, 2013) ("to state a claim, plaintiff must allege that he complained to a credit reporting agency, that the credit reporting agency notified defendant of the dispute,

22

and that the defendant failed to conduct a reasonable investigation or other specific duty establish by the FCRA"), *report and recommendation adopted by* 2013 WL 1129608 (W.D. Mich. Mar. 18, 2013).

Like in *Tillman*, viewing the allegations in the Complaint in the light most favorable to Plaintiff, she has pleaded enough facts to survive a motion to dismiss. Specifically, she pleaded that she "submitted a letter to Equifax disputing the Errant Tradelines," "explain[ing] that the accounts reflected the Errant Tradeline[s] were charged off or paid and closed by Michigan First" and "[s]he no longer has an obligation to make monthly payments to Michigan First" and requested "Equifax to report the Errant Tradelines with a monthly payment of $0.00." (Compl. ¶¶ 11-12, PgID 10.)  She alleges that "Equifax forwarded Plaintiff's consumer dispute to Michigan First" and that "Michigan First received" the complaint.  (*Id.* ¶¶ 13-14.) She alleges that "Michigan First did not consult the Credit Reporting Resource Guide as part of its investigation of Plaintiff's dispute" but instead "verified to Equifax that its reporting of its Errant Tradeline was accurate," although she "had not received Equifax's investigation results."  (*Id.* ¶¶ 15-17, PgID 11.)  She claims that Defendant negligently and willfully "failed to conduct a proper investigation of [her] dispute," "failed to review all relevant information available to it and provided

23

by Equifax in conducting its investigation" and "failed to direct Equifax to report the Errant Tradelines with a monthly payment of $0.00." (*Id.* ¶¶ 20-21, 27-28.)

Thus, construing the Complaint in the light most favorable to Plaintiff, accepting her allegations as true, and drawing all reasonable inferences in favor of Plaintiff, the Court finds that Plaintiff has sufficiently alleged that Defendant conducted an inadequate investigation. *See Handy-Clay*, 695 F.3d at 538.

### D.    Plaintiff Has Sufficiently Alleged Damages

Defendant argues that Plaintiff fails to sufficiently plead that she has suffered damages. (Def.'s Mot. at pp. 13-14, PgID 45-46.) It contends that "'[t]o prevail on claims under § 1681o, Plaintiff must establish actual damages and a causal relationship between the damages and a causal relationship between the damages and the furnisher[']s alleged violations of the FCRA.'" (*Id.* at p. 13, PgID 45, quoting *Yeska v. Experian Info. Sols., Inc.*, No. 16-12395, 2016 WL 7674783, at *5 (E.D. Mich. Dec. 21, 2016), *report and recommendation adopted by* 2017 WL 85830 (E.D. Mich. Jan. 10, 2017).) Defendant argues that the plaintiff in *Yeska* alleged that he "suffered damages, mental anguish, suffering, humiliation and embarrassment" and the court found that allegations lacking and dismissed the plaintiff's § 1681o claim. (*Id.*, citing *Yeska* at *5.) Defendant argues that "Plaintiff has generally pled that she suffered 'mental anguish, suffering, humiliation, and embarrassment'" and "has not

24

alleged any specific financial harm or any specific event where she incurred emotional distress" and thus "she has failed to sufficiently plead damages and her § 1681o claim should be dismissed." (*Id.* at pp. 13-14, PgID 45-46.)

Plaintiff responds that she is not required to more specifically plead her damages. (Pl.'s Resp. at pp. 19-21, PgID 176-78.) She "pled that she suffered credit and emotional damages as a direct and proximate cause of [Defendant's] violations of the FCRA" (*id.* at p. 20, PgID 177, citing Compl. ¶ 18), and "further pled that as a direct and proximate cause of [Defendant's] violations of the FCRA, she suffered mental anguish, suffering, humiliation and embarrassment." (*Id.*, citing Compl. ¶¶ 23, 29.) She argues that these allegations are "sufficient to put [Defendant] on notice of her claims for damages, which is all that [she] is required to do at the pleading stage." (*Id.*) She asserts that "numerous courts have held that the pleading of damages like that by Plaintiff satisfies the general pleading standards." (*Id.* at pp. 20-21, PgID 177-78, citing *Lovelace*, 2019 WL 2410800, at *5; *Ellis v. Equifax Info. Servs., LLC*, No. 1:18-cv-5185-TCB-CMS, 2019 WL 3503538, at *4 (N.D. Ga. June 6, 2019); *Ellis v. Equifax Info. Servs., LLC*, No. 1:18-cv-5185-TCB-CMS, 2019 WL 3521436, at *5 (N.D. Ga. June 6, 2019); *Foster v. Santander Consumer USA, Inc.*, No. 1:18-CV-4146-WMR-JFK, 2019 WL 3490463, at *13 (N.D. Ga. May 29, 2019); *Campbell v. Equifax Info. Servs., LLC*, No. 4:18-cv-53, 2019 WL 1332375, at *6

(S.D. Ga. Mar. 25, 2019); *Burns Trans Union, LLC*, No. 4:18-03120-MGL, 2019 WL 3890833, at \*2-3 (D.S.C. Aug. 19, 2019); *Hamm v. Equifax Info. Servs., LLC*, No. CV-17-03821-PHX-JJT, 2018 WL 3548759, at \*4 (D. Ariz. July 24, 2018); *Wheeler v. Trans Union, LLC*, No. CV-17-03328-PHX-JAT, 2018 WL 2431876, at \*4 (D. Ariz. May 30, 2018).)

The Sixth Circuit recently explained that "'[d]istress,' including 'mental suffering or emotional anguish,' 'is a personal injury familiar to the law, customarily proved by showing the nature and circumstances of the wrong and its effect on the plaintiff.'"  *Buchholz*, 946 F.3d at 873 (Murphy, J. concurring) (quoting *Carey v. Piphus*, 435 U.S. 247, 263-64 & n.20 (1978)).  Further, the Sixth Circuit has noted that circuit law "counsels against dismissal of … claims on the basis of inartfully-pleaded actual damages."  *Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 722 (6th Cir. 2013) (holding that pleading of damages for a RESPA violation was sufficient where the plaintiff's complaint demanded only "actual damages"); *see also Houston v. U.S. Bank Home Mortg. Wisconsin Servicing*, 505 F. App'x 543, 548 (6th Cir. 2012) ("Houston also alleges financial and emotional damages arising from the violation, which the district court did not address.  She has averred that she suffered 'stress, mental anguish, embarrassment, and humiliation,' because of U.S. Bank's violation, and not merely because of the foreclosure.  We conclude that there is a

genuine issue of material fact as to whether Houston suffered damages as a result of U.S. Bank's RESPA violation.").

Again, looking to the court's analysis in *Tillman*, that court found, when analyzing almost identical damages allegations, that "the plaintiff has adequately identified the emotional distress damages that she contends she suffered as a result of the Credit Union's inaccurate reporting." *Tillman*, 2020 WL 249004, at *4-5. The court explained that the allegations that plaintiff "'has suffered credit and emotional damages,' comprising 'undue stress and anxiety due to Defendant's failure to correct her credit file,' because the inaccurate reporting has impaired her ability to 'improve her financial situation by obtaining new or more favorable credit terms' … is sufficient both to identify the nature of the damages and the causal connection with the inaccurate reporting, which plaintiff says impaired her ability to procure new and more favorable credit terms." *Id.* at *4.[5]

---

[5] The *Tillman* court also distinguished the "single unpublished district court decision" cited by the defendant "for the proposition that mere allegations of stress and anxiety without more are insufficient to qualify as adequate pleading of damages for an FCRA claim," *Yeska*, 2016, WL 7674783, because the plaintiff in *Yeska* "did not allege a 'specific financial harm[,]' while "Tillman has asserted that she lost opportunities to procure new or more favorable credit terms as a result of the inaccurate reporting." *Tillman*, 2020 WL 249004, at *5. Plaintiff here makes the same allegations of lost opportunities to procure new or more favorable credit terms. (Compl. ¶ 18.)

Plaintiff makes those same allegations in this case, and the Court finds, when construing the Complaint in the light most favorable to Plaintiff, accepting her allegations as true, and drawing all reasonable inferences in favor of Plaintiff, that Plaintiff has sufficiently alleged damages to support her FCRA claims. *See Handy-Clay*, 695 F.3d at 538.

## IV.   CONCLUSION

For the reasons set forth above, Defendant Michigan First's Motion to Dismiss (ECF No. 5) is **DENIED.**  Defendant Michigan First shall file an answer to Plaintiff's Complaint within 14 days of the date of this Opinion and Order.

**IT IS SO ORDERED**.

s/Paul D. Borman
Paul D. Borman
United States District Judge

Dated: May 5, 2020