UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VIVIAN LAWSON,

               Plaintiff,

v.

MICHIGAN FIRST CREDIT UNION
and EQUIFAX INFORMATION
SERVICES, LLC,

               Defendants.

_____/

Case No. 20-cv-10460

Paul D. Borman
United States District Judge

**OPINION AND ORDER:**
**(1) GRANTING DEFENDANT MICHIGAN FIRST CREDIT UNION'S**
**MOTION FOR SUMMARY JUDGMENT (ECF NO. 26) AND**
**(2) DENYING DEFENDANT MICHIGAN FIRST CREDIT UNION'S**
**MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. RULE 11**
**(ECF NO. 21)**

In this action, Plaintiff Vivian Lawson asserts claims against Defendants

Michigan First Credit Union and Equifax Information Services, LLC for alleged

violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, *et seq*.

Plaintiff has voluntarily dismissed her claims against Defendant Equifax. Now

before the Court are Defendant Michigan First's Motion for Sanctions Pursuant to

Fed. R. Civ. P. Rule 11 (ECF No. 21) and Defendant Michigan First's Motion for

Summary Judgment (ECF No. 26). The Court finds that the briefing adequately

addresses the issues in contention and dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2). For the reasons that follow, the Court GRANTS Defendant Michigan First's Motion for Summary Judgment and DENIES Defendant Michigan First's Motion for Sanctions.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Background

On or about January 15, 2020, Plaintiff Vivian Lawson filed this action against Defendants Michigan First Credit Union (Michigan First) and Equifax Information Services, LLC (Equifax) in state court, alleging that they negligently and/or willfully violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, *et seq*. (ECF No. 1-1, Compl.) Specifically, Plaintiff alleges that Michigan First violated the Act by inaccurately reporting three tradelines on her Equifax credit disclosure with an inaccurate monthly payment of $379.00, $328.00, and $151.00, respectively, when those accounts were either charged off and closed, or paid and closed, and Plaintiff no longer has an obligation to make a monthly payment. Defendant Michigan First was served with the Complaint on or about February 7, 2020, and timely removed this action to this Court on February 21, 2020. (ECF No. 1.) Defendant Equifax was never served with the Complaint, and Plaintiff filed a Notice of Voluntary Dismissal

of her claims as to Defendant Equifax Information Services, LLC, only, on May 4, 2020. (ECF No. 10.)

On May 5, 2020, this Court denied Defendant Michigan First's Motion to Dismiss Plaintiff's Complaint, finding, when construing Plaintiff's Complaint (which the Court noted did not attach a copy of, or otherwise include a representation of, the credit reports at issue) in the light most favorable to Plaintiff, that Plaintiff plausibly pleaded a violation of the FCRA. (ECF No. 11, Opinion and Order Denying Defendant Michigan First Credit Union's Motion to Dismiss.)

Now that discovery has been completed, Defendant Michigan First moves for summary judgment, arguing that the documentary evidence shows that the credit report is accurate with regard to the three tradelines at issue and therefore does not violate the FCRA. Michigan First has also filed a motion for sanctions against Plaintiff and her attorney under Fed. R. Civ. P. 11 because courts in this and other districts have unanimously rejected Plaintiff's theory of liability, when presented with materially similar credit reports.

### B.      Statement of Facts

On or about December 20, 2013, Plaintiff purchased a used 2012 Dodge Journey from LaFontaine Nissan Inc. pursuant to a Retail Installment Contract and Security Agreement (RISC). (ECF No. 26-1, RISC, PageID.507-08.) The dealership

then assigned the RISC to Defendant Michigan First. (*Id.*) Pursuant to the RISC, Plaintiff was required to make 72 monthly payments of $379.05, beginning on January 19, 2014. (*Id.*) Plaintiff was also required to maintain adequate insurance on the vehicle (*id.*), which she failed to do. (ECF No. 26-2, Deposition of Vivian Walker Lawson ("Lawson Dep.") at pp. 64, 75-76, PageID.526, 529.) As a result, Michigan First obtained collateral protection insurance (CPI) on the vehicle. (Lawson Dep. at p. 72, PageID.528.) When Michigan First added the CPI, Plaintiff could no longer afford the monthly payments, and Michigan First repossessed the vehicle due to the insufficient payments. (*Id.* at pp. 76-77, PageID.529.) The balance of the RISC was later paid in full in June of 2017. (*Id.* at p. 34, PageID.519.)

Plaintiff's Complaint in this case claims that the way Michigan First is reporting the accounts representing the RISC and the two CPI loans on her Equifax credit report is inaccurate and thus a violation of the FCRA. (Compl.; Lawson Dep. at pp. 77-78, PageID.529-30.) Plaintiff claims that she obtained her Equifax credit disclosure on May 18, 2019, and noticed that the tradelines were reported inaccurately and included erroneous monthly payment amounts. (Compl. ¶ 10, PageID.10.) Those credit lines appear as follows:

## MICHIGAN FIRST CREDI $0

### Account Details

| | |
|---|---|
| Last Reported | Apr 29, 2019 |
| Creditor Name | MICHIGAN FIRST CREDI |
| Account Type | Auto |
| Account Status | Closed |
| Opened Date | Jan 06, 2014 |
| Closed Date | -- |
| Limit | -- |
| Term | 72 Months |
| Monthly Payment | $379 |
| Responsibility | Joint Account |
| Balance | $0 |
| Highest Balance | -- |
| Payment Status | Collection/Charge-Off |
| Worst Payment Status | -- |
| Date of Last Payment | May 01, 2017 |
| Amount Past Due | -- |
| Times 30/60/90 Days Late | 2/2/11 |
| Remarks | Paid charge off Fixed rate |

### Payment History

Latest Status: Collection/Charge-Off



- **CO** Unknown
- **CO** Collection/Charge-Off
- **X** 60-89 Days Late
- **X** 90-119 Days Late
- **X** 30-59 Days Late
- **X** 120-149 Days Late

---

## MICHIGAN FIRST CREDI $0

### Account Details

| | |
|---|---|
| Last Reported | Apr 29, 2019 |
| Creditor Name | MICHIGAN FIRST CREDI |
| Account Type | Unsecured Loan |
| Account Status | Closed - Paid and Closed |
| Opened Date | Aug 04, 2015 |
| Closed Date | Feb 01, 2016 |
| Limit | -- |
| Term | 9 Months |
| Monthly Payment | $328 |
| Responsibility | Joint Account |
| Balance | $0 |
| Highest Balance | $3,148 |
| Payment Status | Current |
| Worst Payment Status | -- |
| Date of Last Payment | Feb 01, 2016 |
| Amount Past Due | -- |
| Times 30/60/90 Days Late | 1/1/3 |
| Remarks | -- |

### Payment History

Latest Status: Current

- Unknown
- **X** 120-149 Days Late
- **X** 150+ Days Late
- **X** 30-59 Days Late
- **X** 60-89 Days Late
- **X** 90-119 Days Late



(ECF No. 26-5, Equifax Credit Report, PageID.562, 574-75.)

Thus, for the auto loan, the tradeline includes the following details: (1) an "Opened Date" of January 6, 2014; (2) "Account Status" as "Closed"; (3) a "Last Reported" date of April 29, 2019; (4) a 72 month term and "Monthly Payment" of $379; (5) a "Date of Last Payment" of May 1, 2017; (6) a "Balance" of $0; and (7) a "Payment Status" as "Collection/Charge-Off." (*Id.* PageID.562.) For the first CPI, the tradeline includes the following details: (1) an "Opened Date" of August 4, 2015; (2) "Account Status" as "Closed – Paid and Closed"; (3) a "Last Reported" date of April 29, 2019; (4) a nine month term and "Monthly Payment" of $328; (5) a "Date

of Last Payment" of February 1, 2016; (6) a "Balance" of $0; and (7) a "Payment Status" as "Current." (*Id.* PageID.574.) For the second CPI, the tradeline includes the following details: (1) an "Opened Date" of June 9, 2014; (2) "Account Status" as "Closed – Paid and Closed"; (3) a "Last Reported" date of April 29, 2019; (4) a 19 month term and "Monthly Payment" of $151; (5) a "Date of Last Payment" of February 1, 2016; (6) a "Balance" of $0; and (7) a "Payment Status" as "Current." (*Id.* PageID.575.)

On or about June 27, 2019, Plaintiff sent a letter to Equifax Information Services, LLC, disputing these three tradelines. (ECF No. 26-3, 6/27/19 Letter to Equifax, PageID.547-48.) In her letter, Plaintiff claimed that the monthly payment notations, which are reported as "$379," "$328," and "$151," should be reported as "$0" because the RISC was charged off and the accounts representing the CPI were closed with a zero balance. (*Id.*) (Lawson Dep. at pp. 77-78, PageID.529-30.) The monthly payment notations are the only information in the credit reports that Plaintiff disputes in this litigation. (ECF No. 26-4, Plaintiff's Responses to Defendant's Requests for Admission, Request No. 1, PageID.550.) Plaintiff admits that the monthly payment notations accurately reflect the amount of the monthly payments she was required to pay pursuant to her agreement with Michigan First

(*id.*, Request No. 3, PageID.551), but she requested that the monthly payment amounts be replaced with "$0." (6/17/19 Letter to Equifax, PageID.547-48.)

Plaintiff alleges that Michigan First received her consumer dispute from Equifax and, in response, Michigan First verified to Equifax that its reporting of its tradelines was accurate. (Compl., ¶¶ 14-16, PageID.10-11.) Plaintiff pleads that she did not receive Equifax's investigation results, and thus, on September 16, 2019, she again obtained her Equifax credit disclosure, which showed that Equifax and Michigan First failed or refused to report the three tradelines with a monthly payment amount of $0.00. (*Id.* ¶ 17, PageID.11.)

Plaintiff then filed her lawsuit in state court, pleading negligent and willful violations of the FCRA by Defendants, 15 U.S.C. §§ 1681n, 1681o. (Compl.) Specifically, with regard to Defendant Michigan First, Plaintiff brings claims pursuant to 15 U.S.C. § 1681s-2(b) due to Michigan First's alleged failure to properly investigate the dispute and correct reporting of the tradelines at issue. (*Id.* ¶¶ 19-30, PageID.11-13.) She pleads that the three tradelines create a misleading impression on her consumer credit file with Equifax and, as a result of Defendant Michigan First's negligent and/or willful failure to comply with the provisions of the FCRA, she has suffered credit and emotional damages and experienced undue stress and anxiety due to Defendant's failure to correct the errors or improve her financial

situation by obtaining new or more favorable credit terms. (*Id.* ¶¶ 18, 22-23, 29-30, PageID.11-13.)

On February 28, 2020, Defendant Michigan First filed a motion to dismiss Plaintiff's Complaint, arguing that Plaintiff failed to plead a FCRA claim against it. (ECF No. 5.) The Court denied the motion, noting in its ruling that the pleadings did not include any representation of the actual credit report including the allegedly erroneous tradelines. But, considering the facts alleged in the complaint, the Court found that Plaintiff had sufficiently pleaded that the tradelines were inaccurate or misleading. (ECF No. 11, Opinion and Order Denying Defendant Michigan First Credit Union's Motion to Dismiss, PageID.261 (noting that Plaintiff "pleads no facts to suggest that the reporting noted that the account was charged off, closed or had a zero balance" and "Plaintiff did not attach a copy of the credit report to the pleadings").)

Discovery closed on December 18, 2020, and Michigan First subsequently filed its motion for summary judgment. Michigan First also moved for sanctions against Plaintiff and her attorney under Fed. R. Civ. P. Rule 11.

## C.    Michigan First's Motion for Sanctions

Defendant Michigan First filed a motion for sanctions pursuant to Fed. R. Civ. P. Rule 11 against both Plaintiff and her counsel. (ECF No. 21, Def.'s Mot. for

Sanctions.) Michigan First argues that Plaintiff and her counsel have no reasonable basis for pursuing the claims in this case because they are "well aware that the Courts in this District which have reviewed credit reports like [the ones in this case], have uniformly rejected the exact claims that Plaintiff alleges," and that "Plaintiff's counsel also served as counsel in those cases." Michigan First contends that "to deter Plaintiff's counsel from engaging in this conduct again, they should be directed to pay all of the reasonable attorneys' fees which resulted from their actions[.]"

Plaintiff responded to Michigan First's motion for sanctions, arguing that the motion for sanctions "is frivolous and is a waste of Plaintiff's time and this Court's time" because Plaintiff's filing of this action on January 21, 2020 was reasonable under the circumstances at the time of the filing, and is bolstered by this Court's denial of Michigan First's motion to dismiss. (ECF No. 23, Pl.'s Resp. to Sanctions Mot.) Plaintiff asserts that the courts' decisions Michigan First cites in its motion were issued after Plaintiff filed this action and cannot retroactively make the filing of the complaint unreasonable and in violation of Rule 11. Plaintiff also contends that Michigan First's request for an award of monetary sanctions against Plaintiff herself is improper because a court may not impose a monetary sanction against a represented party for violating Rule 11(b)(2).

Michigan First filed a reply brief asserting that Plaintiff and her attorney have an ongoing duty under Rule 11 to evaluate their claims and determine whether they are warranted by fact and law. Michigan First argues that Plaintiff and her counsel knew her claims were frivolous when the Court rendered an opinion on Michigan First's motion to dismiss because Plaintiff and her counsel knew her credit reports reflected that the three tradelines were charged off or paid and closed, and with a zero balance, and thus were accurate based on the Court's decision and the case law cited in Michigan First's motion to dismiss. Plaintiff's counsel knows these claims have no merit but they refuse to stop alleging them against Michigan First.

### D. Michigan First's Motion for Summary Judgment

Defendant Michigan First also filed a motion for summary judgment. (ECF No. 26, Def.'s Mot. S.J.) Michigan First initially challenges Plaintiff's standing to pursue her claims, asserting there is no evidence that she suffered an "actual injury" as a result of the allegedly inaccurate reporting. Turning to the merits of Plaintiff's FCRA claims, Michigan First argues that Plaintiff's claims that (1) Michigan First was "negligent in failing to comply" with the FCRA, 15 U.S.C. § 1681o, or (2) that Michigan First "willfully fail[ed] to comply with any requirement imposed" under the FCRA, 15 U.S.C. § 1681n, fail because the tradelines, read as a whole, reveal that the "monthly payment" amounts are merely historical and do not indicate any

11

ongoing payment obligations, and thus they are accurate. Michigan First further argues that Plaintiff's FCRA claims fail because she has not shown that Michigan First failed to conduct a reasonable investigation of her dispute, and because she has no damages.

Plaintiff filed a response in opposition to Michigan First's motion for summary judgment. (ECF No. 27, Pl.'s Resp. S.J.) Plaintiff argues that she has standing to bring her claims because she has suffered redressable damages and also that Michigan First's violations of the FCRA alone confer standing. Plaintiff also argues that Michigan First's reporting is patently false because Plaintiff did not owe scheduled monthly payments at the time of her dispute. She further contends that Michigan First failed to perform a reasonable inspection of her dispute, and that she has established her damages.

Michigan First filed a reply brief in support of its Motion for Summary Judgment, reasserting the arguments made in its motion. (ECF No. 28, Def.'s Reply S.J.)

## II. LEGAL STANDARDS

### A.    Summary Judgment

Summary judgment is appropriate where the moving party demonstrates that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986); Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of a motion for summary judgment where proof of that fact 'would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.'" *Dekarske v. Fed. Exp. Corp.*, 294 F.R.D. 68, 77 (E.D. Mich. 2013) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"In deciding a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party." *Perry v. Jaguar of Troy*, 353 F.3d 510, 513 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). At the same time, the non-movant must produce enough evidence to allow a reasonable jury to find in his or her favor by a preponderance of the evidence, *Anderson*, 477 U.S. at 252, and "[t]he 'mere possibility' of a factual dispute does not suffice to create a triable case." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 576 (6th Cir. 2004) (quoting *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). Instead, "the non-moving party must be able to show sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." *Arendale v. City of Memphis*,

519 F.3d 587, 601 (6th Cir. 2008) (quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)). "The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. The plaintiff must present more than a mere scintilla of the evidence. To support his or her position, he or she must present evidence on which the trier of fact could find for the plaintiff." *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000) (internal quotation marks and citations omitted). "'The central issue is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010) (quoting *In re Calumet Farm, Inc.*, 398 F.3d 555, 558 (6th Cir. 2005)). That evidence must be capable of presentation in a form that would be admissible at trial. *See Alexander v. CareSource*, 576 F.3d 551, 558–59 (6th Cir. 2009).

### B.      Rule 11 Sanctions

Federal Rule of Civil Procedure 11 requires an attorney to certify "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that "a pleading, written motion, or other paper" (1) "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;" that (2) "the claims, defenses, and other legal contentions are warranted by existing law or by a

nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;" that (3) "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and" that (4) "the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information." Fed. R. Civ. P. 11(b). Rule 11(c) states that if "the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." The sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). "[I]f imposed on motion and warranted for effective deterrence," the sanction may include "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4).

"[I]n this circuit, the test for the imposition of Rule 11 sanctions is whether the individual attorney's conduct was reasonable under the circumstances." *Mann v. G&G Mfg., Inc.*, 900 F.2d 953, 958 (6th Cir. 1990) (citing *Century Products, Inc. v. Sutter*, 837 F.2d 247 (6th Cir. 1988)). *See also Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 510 (6th Cir. 2014) ("Rule 11 sanctions may be awarded only if

[the party's] conduct in the litigation was objectively unreasonable ... or if [the party] did not have a reasonable basis for making her claim."). Moreover, "[c]ounsel's subjective belief in the propriety of the pleading is irrelevant in determining whether Rule 11 has been violated since that assessment must be made using an objective test of reasonableness under the circumstances." *Elsman v. Standard Fed. Bank (Michigan)*, 238 F. Supp. 2d 903, 908-09 (E.D. Mich. 2003).

## III. ANALYSIS

### A. Michigan First's Motion for Summary Judgment

#### 1. The Fair Credit Reporting Act

"Congress enacted [the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.*,] in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 628 (6th Cir. 2018). The statute imposes different obligations on three types of entities: (1) consumer reporting agencies, such as Equifax Information Services, LLC; (2) users of consumer reports; and (3) furnishers of information to consumer reporting agencies, such as Defendant Michigan First. *See Nelski v. Tran Union LLC*, 86 F. App'x 840, 844 (6th Cir. 2004).

The FCRA "requires consumer credit reporting agencies to 'follow reasonable procedures to assure maximum possible accuracy of' consumer credit reports."

*Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 862 (6th Cir. 2020) (quoting 15 U.S.C. § 1681e(b)). "The statute provides consumers with a cause of action if a consumer reporting agency violates their statutorily created procedural rights." *Id.*

"Under the FCRA, those who furnish information to consumer reporting agencies have two obligations: (1) to provide accurate information; and (2) to undertake an investigation upon receipt of a notice of dispute regarding credit information that is furnished." *Scott v. First Southern Nat'l Bank*, 936 F.3d 509, 517 (6th Cir. 2019) (quotations omitted); *see* 15 U.S.C. § 1681s-2. "The FCRA creates a private right of action for consumers to enforce the requirement under § 1681s-2(b) that furnishers of information investigate upon receiving notice of a dispute, but not the requirement under § 1681s-2(a) that furnishers of information initially provide accurate information to consumer reporting agencies." *Id.* Thus, "consumers must file a dispute with a consumer reporting agency to trigger the furnisher's duty to investigate under § 1681s-2(b)." *Id.*

"After receiving notice of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency," the reporting entity must:

> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

17

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly —

   (i) modify that item of information;

   (ii) delete that item of information; or

   (iii) permanently block the reporting of that item of information.

*Pittman*, 901 F.3d at 628 (quoting 15 U.S.C. § 1681s-2(b)(1)). The Sixth Circuit has

held that the investigation an information furnisher must undertake pursuant to this

section is a "reasonable one" and that "the term 'investigation' … denotes a 'fairly

searching inquiry,' or at least something more than a merely cursory review." *Boggio*

*v. USAA Fed. Sav. Bank*, 696 F.3d 611, 616 (6th Cir. 2012) (citations omitted).

   The "FCRA expressly creates a private right of action against a furnisher who

fails to satisfy one of five duties identified in § 1681s-2(b)." *Pittman*, 901 F.3d at

628. A "consumer is permitted to demonstrate that a furnisher negligently breached

one of these duties, under § 1681o, or willfully breached one of them, under §

1681n." *Id.* Regardless of the particular breach alleged, "a threshold showing of inaccuracy or incompleteness is necessary in order to succeed on a claim under § 1681s-2(b)." *Id.* at 629.

Thus, the required elements of a viable claim of inaccurate reporting against a furnisher are: "(1) the defendant reported inaccurate information about the plaintiff; (2) the defendant either negligently or willfully failed to follow reasonable procedures to assure maximum possible accuracy of the information about the plaintiff; (3) the plaintiff was injured; and (4) the defendant's conduct was the proximate cause of the plaintiff's injury." *Nelski*, 86 F. App'x at 844.

### 2. Standing

Michigan First initially asserts that Plaintiff lacks standing to pursue her FCRA claim. Article III, § 2 of the Constitution extends the judicial power of the United States "only to 'Cases' and 'Controversies.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) ("*Spokeo II*") (quoting U.S. Const. Art. III, § 2). Standing "ensure[s] that federal courts do not exceed their authority" and "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.* Standing is a jurisdictional requirement. *See Coal Operators & Assocs., Inc. v. Babbitt*, 291 F.3d 912, 915 (6th Cir. 2002). Thus, if a plaintiff does

not have standing, the court lacks subject matter jurisdiction. *See Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017).

To establish standing, a plaintiff must meet the minimum threshold of having "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo II*, 136 S. Ct. at 1547. "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Therefore, at the pleading stage, general factual allegations of injury may be sufficient. *Id.* However, in response to a motion for summary judgment "the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts' which for purposes of the summary judgment will be taken as true." *Id.* (internal citations omitted).

The Sixth Circuit interpreted and applied *Spokeo II* in the FCRA context in *Huff v. Telecheck Services, Inc.*, 923 F.3d 458 (6th Cir. 2019), *cert. denied*, 140 S. Ct. 1117 (Feb. 24, 2020). The Sixth Circuit explained in *Huff* that the plaintiff has

three ways to satisfy Article III's standing requirement: (1) "the statutory violation created an injury in fact as applied to [Plaintiff] because it actually injured [her,];" (2) "the risk of injury was so imminent that it satisfies Article III"; or (3) "the statutory violation did not create an injury in any traditional sense, but Congress had authority to establish the injury in view of its identification of meaningful risks of harm in this area." *Id.* at 463.

Michigan First contends that Plaintiff lacks standing because she has not presented evidence of an injury in fact. Injury-in-fact is the "[f]irst and foremost" element of the standing inquiry; "[a]n injury in fact must be real, not abstract, actual, not theoretical, concrete, not amorphous." *Huff*, 923 F.3d at 462 (citing *Spokeo II*, 136 S. Ct. at 1548). This first requirement requires proof of an actual injury, that is, "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo II*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.*

The Sixth Circuit in *Huff* found that the plaintiff failed to show actual injury because "[h]e does not allege, must less prove, harm in the flesh-and-blood or dollars-and-cents sense of harm." *Huff*, 923 F.3d at 463. The Court noted that the

21

plaintiff "does not claim that Telecheck's conduct caused a declined check or a denied rental application," "does not suggest that that he wasted time or suffered emotional distress," and "does not contend that he would have done anything with the missing information had he received it – say, by adjusting his spending habits." *Id.*

Similarly, the court in *Thompson v. Equifax Information Services, LLC*, 441 F. Supp. 3d 533 (E.D. Mich. 2020), found with regard to this first prong of the standing analysis that the plaintiff did not demonstrate actual injury because she "submitted no evidence that she suffered any loss of credit or other financial harm as a result of Michigan First's alleged negligent and willful violation of the FCRA." *Thompson*, 441 F. Supp. 3d at 542.

However, the court in *Tillman v. Michigan First Credit Union*, No. 19-12860, 2021 WL 1267583 (E.D. Mich. Apr. 5, 2021), found that the plaintiff offered sufficient evidence of injury in fact to establish Article III standing because she "testified she suffered from 'headaches,' 'weight loss,' and 'loss of sleep,' provoked by worries that she would be unable to obtain new credit due to the inaccurate reporting." *Tillman*, 2021 WL 1267583, at *2. The court further noted that the plaintiff argued that the reporting violation "is substantially likely to harm her statutorily protected interest in her credit history because it involves much more

consequential details than the types of errors found to be insufficient to give rise to standing in *Spokeo* and cases following that decision." *Id.*

In this case, Michigan First argues that, like the plaintiff in *Thompson*, Plaintiff here has not experienced any harm, as she has no out-of-pocket expenses or loss of credit, and she has not been denied any job, insurance, or other opportunity. (Def.'s Mot. S.J. at p. 7, PageID.492, citing Lawson Dep. at pp. 18, 133-35, 137, PageID.515, 543-44.) Michigan First also argues that Plaintiff has no emotional distress, and at most she testified that she feels "a little anxiety" when her credit is run, although she stated that her anxiety arises from her credit in general and her feelings that she is not in her 20s or 30s and she wants to be able to purchase a home. (*Id.*, citing Lawson Dep. at pp. 95-96, 100, PageID.534-35.)

In response, Plaintiff contends that she has provided summary judgment evidence that Michigan First's violations of the FCRA caused her emotional distress. (Pl.'s Resp. S.J. at pp. 9-10, PageID.654-55.) She states that she testified in her deposition that she suffers anxiety and stress when she applies for credit, and that she paid $1,500.00 for payments to a second credit repair organization. (*Id.*, citing Lawson Dep. at pp. 95-96, 134, PageID.534, 544.) She further testified that she has concerns about her credit and passing the character and fitness portion of the bar admission process. (*Id.*, citing Lawson Dep. at pp. 100-01, PageID.535.)

The Court finds that Plaintiff's bare allegations of feeling "a little anxiety" or "stress" about her credit are insufficient to support her claim of an "injury-in-fact." *See Thompson*, 441 F. Supp. 3d at 543 ("finding that "[t]he lack of any evidence substantiating Thompson's bare allegations of emotional distress undermines [her] position that she has established an injury in fact."). Plaintiff further admits that she does not know that she has been denied any job, insurance, or other opportunity because of her credit report. (Lawson Dep. at pp. 18, 133-35, 137, PageID.515, 543-44.) However, she did testify that she paid $1,500.00 to a credit repair organization, to address her concerns regarding her credit report, and that she would like to be reimbursed for that payment. (*Id.* at pp. 134-35, PageID.544.) Plaintiff's testimony regarding this $1,500 payment to repair her credit is sufficient evidence of "financial harm" to establish Article III standing at the summary judgment stage.

Moreover, as the court in *Tillman* explained, "where, as here, the claims are plainly devoid of merit, the defendant only raised the standing issue late in the case, after the close of discovery, and where the defendant also has urged the Court to *exercise* its jurisdiction by issuing a dispositive ruling on the claims and dismissing them *with* prejudice, rather than, as a jurisdictional dismissal must be, *without* prejudice, other federal courts have found it appropriate to bypass any jurisdictional doubts posed by the standing arguments and instead issue a ruling on the merits."

*Tillman*, 2021 WL 1267583, at *2 (emphasis in original) (citing, *e.g.*, *Thompson*, 441 F. Supp. 3d at 547.) This Court will therefore address the merits of Plaintiff's claims.

### 3. Whether Plaintiff Has Sufficiently Alleged Inaccurate or Misleading Reporting

Turning to the merits of Plaintiff's claims, Defendant Michigan First argues that Plaintiff has failed to show that the tradelines at issue are inaccurate, and that if she cannot show that the tradelines are inaccurate her FCRA claims fail. (Def.'s Mot. S.J. at p. 10, PageID.495.) Defendant is correct, and this issue is dispositive, as it is well settled that, regardless of the particular breach of the FCRA that is alleged, "a threshold showing of inaccuracy or incompleteness is necessary in order to succeed on a claim under § 1681s-2(b)." *Pittman*, 901 F.3d at 629.

Michigan First explains that the tradeline representing the RISC reflects that the account was charged off and closed and the current balance is zero, and that the other two tradelines representing the CPI both state that the accounts were paid and closed with a zero balance. (Def.'s Mot. S.J. at p. 11, PageID.496.) Defendant contends that courts have determined that simply reporting the historical monthly payment amount on an account that was charged off and closed, or paid and closed, is accurate and not misleading. (*Id.*)

The Sixth Circuit recently clarified the definition of "inaccuracy" under the FCRA and the showing that must be made to sustain the element of inaccurate reporting. *See Twumasi-Ankrah v. Checkr, Inc.*, 954 F.3d 938, 942 (6th Cir. 2020).[1] The Sixth Circuit held that "to state the first element of a claim [of inaccurate reporting under the FCRA], a plaintiff may allege that a CRA reported either 'patently incorrect' information about them *or* information that was 'misleading in such a way and to such an extent that it [could have been] expected to have an adverse effect [on the consumer].'" *Id.* (emphasis in original) (quoting *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001)).

Plaintiff here does not contend that the tradelines at issue are misleading. (Pl.'s Resp. S.J. at pp. 14-15, PageID.659-60.) Rather, she contends only that the tradelines at issue are "patently incorrect" for the sole reason that they noted "scheduled monthly payment amounts." Plaintiff insists that the "scheduled monthly payment" amount should have been reported as "$0" because she no longer had an obligation to make scheduled monthly payments at the time of her dispute, and that Michigan

_____

[1] As this Court explained in its prior Opinion and Order denying Defendant's motion to dismiss, although the Court in *Twumasi-Ankrah* addressed a different provision of the FCRA – 15 U.S.C. § 1681e(b) – there is no reason to believe that the "accuracy" definition is any different under 15 U.S.C. § 1681s-2(b). Indeed, the *Twumasi-Ankrah* court stated that "[o]ur published case law concerning § 1681-2(b) … confirms the logic of this result." *Twumasi-Ankrah*, 954 F.3d at 942-43.

First's "continued reporting of currently owed scheduled monthly payment obligations for Plaintiff's closed accounts are therefore patently incorrect." (Pl.'s Resp. S.J. at p. 14, PageID.659.) The Court notes that while Plaintiff repeatedly complains about the "scheduled monthly payment" amounts in her Response brief, *see* Pl.'s Resp. S.J. at pp. 6-9, 12-16, 18-20, 23, 25, PageID.651-54, 657-61, 663-65, 668, 670, the word "scheduled" does not appear in the Complaint or on Plaintiff's credit reports. Rather, the credit reports at issue simply refer to the term "Monthly Payment."

When this Court issued its Opinion and Order denying Defendant Michigan First's motion to dismiss, it's ruling was based on the allegations in Plaintiff's Complaint, and the Court noted that it did not have the actual credit reports. The Court explained that Plaintiff "pleads no facts to suggest that the reporting noted that the account was charged off, closed or had a zero balance" and "Plaintiff did not attach a copy of the credit report to the pleadings." (ECF No. 11, Opinion and Order Denying Defendant Michigan First Credit Union's Motion to Dismiss, PageID.261.) However, those credit reports have now been provided to the Court, and they portray Plaintiff's claims in a very different light.

The reporting in this case is indistinguishable from those cases where summary judgment has been granted in favor of Michigan First based on tradelines

that include clarifying information indicating that the account had been "closed," "charge off," or "paid off," and thus the "monthly payment" notation is historical and not current. In *Thompson*, the plaintiff alleged that the tradeline was inaccurate because it reflected a monthly payment of $489 on an account that was charged off. The *Thompson* court noted that "[i]t is clear from reading the trade line as a whole that the 'monthly payment' field is historical rather than current because other fields in the trade line state that the balance is '$10,008,' that the 'payment status' is 'collection/charge-off,' that the 'amount past due' is '$10,008," that the account's 'closed date' is "Jan. 1, 2017,' and that the 'account status' is 'closed-derogatory.'" 441 F. Supp. 3d at 549. The *Thompson* court found that "[a]ny creditor or consumer of credit reports reading Plaintiff's Michigan First's tradeline would not be misled." *Id.* (noting further "[t]hat Plaintiff has not argued that a single creditor or consumer of credit reports was indeed misled by the trade line further supports this" conclusion).

In *Tillman*, the court found that "[t]he tradeline in this case is replete with details confirming that the 'monthly payment' amount is merely historical and does not indicate any ongoing payment obligation, such as notations that the status of the account was 'charged off' and 'closed,' and the timeline indicating the transition from 'current' to 'late' to 'charged off,' which also notes that the 'latest status' was

'charged off,' indicating no present, ongoing monthly payment obligation." *Tillman*, 2021 WL 1267583, at *4. That court held that "[n]othing in the tradeline, considering all of the information reported, was in any sense 'incorrect' or 'misleading,' and no reader of the report could have been confused about the status of the account." *Id.* *See also Calvin v. Michigan First Credit Union*, No. 19-11519, 2020 WL 3972519, at *3 (E.D. Mich. July 14, 2020) ("Credit reports with a non-zero scheduled monthly payment balance and account status of 'charged off and closed' have been found not to be materially misleading or factually inaccurate. District courts in this circuit have found scheduled monthly payment fields to be historical and relay only what the monthly payment was before an account was charged off or closed."); *Euring v. Equifax Info. Servs., LLC*, No. 19-11675, 2020 WL 3833042, at *2 (E.D. Mich. July 8, 2020) ("[T]he reported monthly payments in the present case are not inaccurate because no one reading plaintiff's credit reports, whether a layperson or prospective creditor, would reasonably believe that plaintiff actually owes or is making such payments. The credit reports plainly indicate that both of plaintiff's MFCU accounts were closed and charged off in 2015. Therefore, the reported monthly payments can only be understood as the amounts plaintiff had agreed to pay when the loans were extended."); *see also Taylor v. Equifax Info. Servs., LLC*, No. 20-10462, 2020 WL 3250224, at *2 (E.D. Mich. June 16, 2020) (collecting cases); *Rider v. Equifax Info.*

29

*Servs. LLC*, No. 19-13660, 2020 WL 3036337, at *1 (E.D. Mich. June 5, 2020) ("Neither report is plausibly misleading or inaccurate. True, as Rider alleged in her complaint, the July 2018 report states 'scheduled paym[e]nt amount' of '$151.' And assuming Rider paid off the account, that is probably misleading. But that statement does not stand alone. On the very same tradeline the following appears: 'Balance Amount $0,' 'Date Closed 06/2015,' and 'ADDITIONAL INFORMATION – Closed or Paid Account/Zero Balance.' Taken all together, who would think Rider was still paying $151 a month to Michigan First?"); *Euring v. Equifax Info. Servs., LLC*, No. 19-11675, 2020 WL 1508344, at *5 (E.D. Mich. Mar. 30, 2020) ("Even if the Court applies plaintiff's definition of accuracy, there is nothing false or materially misleading about the 'Monthly Payment' information on plaintiff's credit reports in light of the other information that appears on those reports.").[2]

In this case, the RISC tradeline reflects that the account is "closed," that it was "paid charge off," that the balance is "$0," that there is no amount past due, and that the latest status is "collection/charge off." (Credit Report, PageID.562.)

---

[2] The out-of-circuit cases Plaintiff relies on in her Response brief are wholly distinguishable, as those cases all involve motions to dismiss, not summary judgment, and the courts did not consider the plaintiffs' credit reports. (See Pl.'s Resp. S.J. at pp. 16-17, PageID.661-62.)

Likewise, the two CPI tradelines reflect that the accounts are "closed – paid and closed," the balance on each is "$0," that there is no amount past due, and that the latest status is "current." (*Id.* PageID.574-75.) The "monthly payment" amounts listed on the tradelines are merely historical and do not indicate any ongoing payment obligations. These tradelines, read as a whole, are not in any sense inaccurate or misleading, and no reader of the report could have been confused about the status of the accounts.

The Court finds that Plaintiff cannot make the required threshold showing of inaccurate reporting for the three tradelines at issue, and accordingly both her negligent and willful claims under the FCRA fail as a matter of law. This finding is dispositive of Plaintiff's claims and the Court need not address Defendant's remaining arguments.

The Court therefore grants Defendant's motion for summary judgment.

**B.    Michigan First's Motion for Rule 11 Sanctions**

Michigan First argues in its motion for sanctions that the claims asserted by Plaintiff in this case are the same claims asserted by her counsel in a number of cases filed in this District, including several cases against Michigan First in particular, and that those courts have uniformly held (in decisions dated between February and July 2020) that the presence of the historical monthly payment amount in materially

identical tradelines is not inaccurate of misleading, and dismissed those FCRA claims with prejudice. (Def.'s Mot. Sanctions at pp. 4-7, PageID.328-31 (collecting cases).) Michigan First contends that Plaintiff and her counsel therefore have no reasonable, good faith basis for continuing to pursue those claims in this action, and that Plaintiff and her counsel should be ordered to pay all of the reasonable attorney's fees which resulted from their actions, in order to deter them from engaging in this conduct again.

Plaintiff responds that she is "puzzled" by this motion for sanctions because she brought this action on January 21, 2020, before those adverse decisions were rendered, and her complaint survived a motion to dismiss, with the Court stating "it is plain that Plaintiff's Complaint pleads sufficient facts to establish the threshold allegation that the Errant Tradelines were inaccurate or misleading." (Pl.'s Resp. Sanctions at pp. 5-6, citing ECF No. 11, PageID.257.) She asserts that her complaint was reasonable under the circumstances at the time of filing, and that "the opinions cited by [Michigan First] cannot retroactively make the filing of the complaint unreasonable and in violation of Rule 11." (*Id.* at p. 10, PageID.396.)

The same arguments raised in this motion were recently considered by another court in this District in *Tillman v. Michigan First Credit Union*, No. 19-12860, 2021 WL 1267583 (E.D. Mich. Apr. 5, 2021), involving the same plaintiff's counsel and

addressing materially similar allegations and credit reports. In that case, defendant Michigan First argued that it was entitled to Rule 11 sanctions because plaintiff and her counsel continued to pursue claims of inaccurate reporting that have no arguable legal merit. *Id.* at *5. The *Tillman* court noted that: "(1) the plaintiff obtained her copy of the April 2019 credit report well before filing this suit, (2) that report plainly states details of the tradeline at issue which decisively defeat her claims, and (3) those additional details were not alluded to anywhere in the October 2019 pleading that initiated this lawsuit." *Id.* The court concluded that "[t]he record ... suggests a reasonable inference that the details may have been omitted for the purpose of bolstering the viability of the claims against early dispositive motion practice, despite being premised on claims that plainly (now) are seen to be without merit," and thus "suggests questions about whether due regard was paid by plaintiff's counsel to his duty of candor to the Court." *Id.* at *6. The *Tillman* court nevertheless declined to award Rule 11 sanctions against plaintiff's counsel because (1) the adverse decisions were rendered well after the complaint was filed, (2) the court denied defendant's motion to dismiss, (3) the defendant did not cite authority for imposing sanctions where a party and her counsel merely refuse voluntarily to dismiss viably pleaded claims when subsequent rulings suggest that they ultimately may fail, and (4) plaintiff's claims were not deemed frivolous, as the Credit

Reporting Resource Guide (CRRG) suggests exactly the rule of reporting for which plaintiff advocates. *Id.*[3] The court further presumed that plaintiff's counsel's representation of plaintiff was on a contingent fee basis, and the counsel's failure to recovery any fees "ought to serve sufficiently to convince plaintiff's counsel that filing materially identical claims in the future would be a losing proposition." *Id.*

This Court finds the *Tillman* court's analysis persuasive. The facts in this case present a close call, but the Court notes that, as in *Tillman*, the adverse decisions cited by Michigan First were all issued after Plaintiff's Complaint was filed in this case, and that Plaintiff's Complaint did survive a motion to dismiss. Further, Plaintiff's counsel presumably is representing Plaintiff on a contingent fee basis, and her counsel's failure to recovery any fees "ought to serve sufficiently to convince plaintiff's counsel that filing materially identical claims in the future would be a losing proposition." *See Tillman*, 2021 WL 1267583, at *6.

---

[3] Plaintiff alleges that the CRRG "provides the industry standards for credit reporting," and that those standards state that "[w]hen the account is paid in full, the Scheduled Monthly Payment Amount should be zero filled." (Pl.'s Resp. S.J. at pp. 7, 20-21, PageID.652, 665.) Plaintiff states that she "does not rely on the industry standards to show that [Michigan First's] reporting was inaccurate" (*id.* at p. 20, PageID.665), and indeed courts in this District have recognized that "the CRRG 'does not control the outcome of [an] accuracy finding.'" *Euring*, 2020 WL 1508344, at *9.

However, Michigan First is correct that the mandate for reasonable conduct under Rule 11 is an ongoing one, requiring regular review and modification, if necessary, to conform to Rule 11. *See Runfola & Assoc., Inc. v. Spectrum Reporting II, Inc.,* 88 F.3d 368, 374 (6th Cir.1996). As the Sixth Circuit explained in *Shirvell v. Gordon*, 602 F. App'x 601 (6th Cir. 2015), a litigant's "[Rule 11] duty does not end when the pleadings are filed." *Id.* at 605.

> Rather, the plaintiff "'is impressed with a continuing responsibility to review and reevaluate his pleadings and where appropriate modify them to conform to Rule 11.'" *Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc.,* 88 F.3d 368, 374 (6th Cir.1996) (quoting *Herron [v. Jupiter Transp. Co.],* 858 F.2d [332] at 335 [(6th Cir. 1988)]). In other words, the Rule "imposes on litigants 'a continuing duty of candor,' and a litigant may be sanctioned 'for continuing to insist upon a position that is no longer tenable.'" *Rentz v. Dynasty Apparel Indus., Inc.,* 556 F.3d 389, 395 (6th Cir.2009) (quoting *Ridder v. City of Springfield,* 109 F.3d 288, 293 (6th Cir.1997)).

*Id.* (finding litigant "violated his ongoing Rule 11 duty" because he "continued to advocate his position, even as further evidence indicated that his claims ... were baseless.").

Thus, even if Plaintiff's counsel arguably had a good faith, reasonable belief in the viability of Plaintiff's claims when the Complaint was filed on or about January 15, 2020, those claims were no longer tenable at the time when Michigan First filed its motion for sanctions in October 2020, and certainly no longer tenable when it filed its motion for summary judgment in February 2021. Further, Plaintiff's

complaint survived a motion to dismiss in this case because Plaintiff did not plead facts to suggest that the "reporting noted that the account was charged off, closed, and had a zero balance," and she "did not attach a copy of the credit report to the pleadings." (ECF No. 11, Opinion and Order, PageID.261.) The Court notes, however, that Plaintiff pleaded that she obtained copies of her credit report in May and September 2019 (Compl. ¶¶ 10, 17, PageID.10-11), well before filing this lawsuit, and that credit report plainly states the details of the tradelines at issue, including that the accounts were charged off or paid, closed, and with a zero balance. (ECF No. 24, Ex. C, PageID.420, 432-23.) Those details were not included in the Complaint, which raises questions as to how diligently Plaintiff's counsel investigated the underlying facts before filing suit, and why, if those facts were known, were they conspicuously omitted from the pleading.

Finally, according to Michigan First, Plaintiff's counsel has filed FCRA cases against it eight other times, alleging the same or similar claims, and similarly conveniently omitting details of the relevant credit reports that the accounts at issue were charged off or paid and closed, with a zero balance. (Def.'s Reply Sanctions, pp. 6-7 & fn. 1, PageID.403-04.) Once the relevant credit reports were provided in those cases (either through discovery or upon order of the court), Michigan First's motion to dismiss or motion for summary judgment was granted because the plaintiff

could not meet the threshold showing of inaccuracy. *See Euring v. Equifax Info. Servs., LLC*, No. 19-11675, 2020 WL 3833042, at *2 (E.D. Mich. July 8, 2020) (Friedman, J.); *Walker v. Equifax Info. Servs., LLC*, Case No. 19-12257 (E.D. Mich. May 1, 2020) slip op. (ECF No. 21, PageID.346-47) (Murphy, J.); *Rider v. Equifax Info. Servs., LLC*, No. 19-13660, 2020 WL 3036377, at *1 (E.D. Mich. June 5, 2020) (Michelson, J.); *Taylor v. Equifax Info. Servs., LLC*, No. 20-10462, 2020 WL 3250224, at *1 (E.D. Mich. June 16, 2020) (Steeh, J.); *Calvin v. Michigan First Credit Union*, No. 19-11519, 2020 WL 3972519, at *3 (E.D. Mich. July 14, 2020) (Tarnow, J.), and *Thompson v. Equifax Info. Servs., LLC*, 441 F. Supp. 3d 533, 548-49 (E.D. Mich. 2020) (Berg, J.). And now *Tillman v. Michigan First Credit Union*, No. 19-12860, 2020 WL 1267583 (E.D. Mich. Apr. 5, 2021) (Lawson, J.) can be added to that list. Plaintiff's counsel's failure to include in the complaints in each case the very information from the credit reports that dooms the FCRA claims cannot be seen as unintentional or accidental.

Accordingly, while the Court declines to impose the monetary sanctions Defendant seeks at this time, the Court is troubled by Plaintiff's counsel's conduct in this case, and others it has filed in this District, and expressly warns Plaintiff's counsel that continuing to file and pursue similar baseless claims going forward will likely result in sanctions pursuant to Fed. R. Civ. P. 11.

## IV. CONCLUSION

For the reasons discussed above,

(1)     Defendant Michigan First's motion for summary judgment (ECF No. 26) is **GRANTED**, and Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**; and

(2)     Defendant Michigan First's Motion for Rule 11 Sanctions (ECF No. 21) is **DENIED**.

IT IS SO ORDERED.

s/Paul D. Borman<br>
Paul D. Borman<br>
United States District Judge

Dated: July 13, 2021